[No. F014825. Fifth Dist. Sept. 20, 1991.]

Conservatorship of MARY K.
KINGS COUNTY HUMAN SERVICES AGENCY, as Public Guardian,
etc., Petitioner and Respondent, v.
MARY K., Objector and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

## COUNSEL

Paul Bernstein, under appointment by the Court of Appeal, for Objector and Appellant.

Denis A. Eymil, County Counsel, and Deborah Bialosky, Deputy County Counsel, for Petitioner and Respondent.

## OPINION

**FRANSON, J.\***—

### STATEMENT OF THE CASE

Mary K. appeals from the imposition of a conservatorship over her person and estate pursuant to the Lanterman-Petris-Short (LPS) Act. (Welf. & Inst. Code, § 5350 et seq.)

On July 9, 1990, the public guardian was appointed as appellant's temporary conservator. Counsel was also appointed to represent appellant in all conservatorship proceedings. Appellant was personally served with a copy of the petition for appointment of a conservator and the citation. A hearing was scheduled for August 2.

At the August 2 hearing, appellant's counsel requested a court trial. Trial was scheduled for August 27, 1990. At the conclusion of the trial, the court found appellant was gravely disabled and granted the conservatorship petition. The court also prohibited appellant from possessing a driver's license, entering into contracts, voting, refusing medical treatment and medication, and possessing a firearm or other deadly weapon.

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.

### STATEMENT OF THE FACTS

Appellant has a history of mental illness dating back to 1973. A recent series of hospitalizations began in May 1990 when she was admitted to the mental health ward at Fresno Community Hospital.

Upon appellant's release from the May 1990 hospitalization, she lived with her son and daughter-in-law, Rick and Robin K., for approximately six weeks. During this period, appellant occasionally wandered around the neighborhood, did not sleep at all during the night, woke up her grandchildren at night by tickling them and turning on their lights, and on one occasion, arranged all of the butcher knives on the kitchen counter. Appellant seemed unable to prepare her own food, take the proper dosage of medication at the correct time, and maintain an adequate level of personal hygiene. When Rick and Robin K. felt they could no longer take care of appellant, she was again hospitalized at Fresno Community Hospital on June 14, 1990.

Following discharge from the hospital, appellant spent one day at a board-and-care home and was then rehospitalized on June 22. Thereafter appellant was placed in a convalescent nursing home but was evicted for noncompliance after one day when she left the facility without authorization. On July 11, appellant was placed at Kings Vista, a locked facility, where she resided at the time of trial.

Dr. Charles Davis, a psychiatrist, diagnosed appellant as suffering from bipolar mood disorder and organic personality syndrome. Bipolar mood disorder is characterized by episodes of both hypomanic behavior and depression. Dr. Davis testified the bipolar mood disorder was in fair remission, i.e., appellant had shown recent improvement. Dr. Davis attributed the organic personality syndrome to a brain aneurysm which had required surgery in 1989. Dr. Davis described the organic personality syndrome as an "effective [sic] instability. Mood changes very rapidly, irritability, impulsiveness, perhaps nervousness, outbursts of aggression, impaired social judgment in deference to the surroundings and how this behavior is affecting others."

In Dr. Davis's opinion, appellant was gravely disabled "based on her immediate past performance. It has been so erratic. She has demonstrated that she was not able to function within normal range and take care of these basic needs." Further, Dr. Davis felt appellant did not appreciate her mental disorder and what she needed to do to be able to function.

Appellant testified that she could care for herself. She believed she could survive if she found a low income living situation where she could get some

housekeeping assistance. Alternatively, appellant stated she had an offer to live with her cousin in Texas. However, appellant testified that at least one time she was hospitalized because she did not take her medication. Appellant further stated she did not feel she had a serious mental problem.

DISCUSSION

I. *Appellant was adequately advised of and waived her rights through her attorney.*

Appellant was present at the August 2, 1990, hearing. At that time, the following exchange took place:

"THE COURT: . . . Mr. Lakeman, have you had an opportunity to talk with your client?

"MR. LAKEMAN [appellant's counsel]:   Yes, your Honor, I've spent some time with my client, both at Kings Vista and this morning. She has indicated that she doesn't feel that she needs a conservator and for that reason, while she is not requesting a jury trial, she would like the Court itself to have a trial on her behalf."

At the beginning of the trial, the court solicited the following waiver from appellant's counsel:

"THE COURT:   Counsel, before we get started will you waive a reading of the Petition and advisement of statutory and constitutional rights?

"MR. LAKEMAN:   Yes, your Honor."

Appellant contends California law requires that the conservatee herself be advised of her rights and that the conservatee personally waive them. Appellant argues the court's failure to procure such personal waivers here requires reversal of the judgment.

Probate Code section 1828, subdivision (a) is the basis of appellant's argument. This section provides that, before a conservatorship is established, the court shall inform the proposed conservatee of all of the following:

"(1)   The nature and purpose of the proceeding.

"(2)   The establishment of a conservatorship is a legal adjudication of the conservatee's inability properly to provide for the conservatee's personal

needs or to manage the conservatee's own financial resources, or both, depending on the allegations made and the determinations requested in the petition, and the effect of such an adjudication on the conservatee's basic rights.

"(3) The proposed conservatee may be disqualified from voting if not capable of completing an affidavit of voter registration.

"(4) The identity of the proposed conservator.

"(5) The nature and effect on the conservatee's basic rights of any order requested under Chapter 4 (commencing with Section 1870), and in the case of an allegedly developmentally disabled adult, the specific effects of each limitation requested in such order.

"(6) The proposed conservatee has the right to oppose the proceeding, to have the matter of the establishment of the conservatorship tried by jury, to be represented by legal counsel if the proposed conservatee so chooses, and to have legal counsel appointed by the court if unable to retain legal counsel."

The code also requires that after the court advises the proposed conservatee of her enumerated rights and prior to the establishment of the conservatorship, the court "shall consult" the proposed conservatee to determine his or her opinion concerning the establishment of the conservatorship, the appointment of the proposed conservator, and any order requested under chapter 4 (legal capacity of the conservatee) and in the case of an allegedly developmentally disabled adult, of each limitation requested in such order. ■ The statutory requirement of consulting the proposed conservatee does not encompass the right to an attorney, to confront witnesses or to a jury trial. (Cf. *Conservatorship of Chambers* (1977) 71 Cal.App.3d 277, 286, fn. 14 [139 Cal.Rptr. 357].)

Appellant also relies on *Conservatorship of Chambers supra*, 71 Cal.App.3d at pages 286-288, where the court, in dicta, stated that Probate Code section 1754.1, the predecessor of section 1828, by implication required an on-the-record voir dire by the court of the proposed conservatee as to his rights. Appellant argues that because the court did not voir dire her to determine whether she understood her rights when she waived them, her waiver was not knowing, voluntary, and intelligent.

■ In *Conservatorship of Roulet* (1979) 23 Cal.3d 219 [152 Cal.Rptr. 425, 590 P.2d 1], the California Supreme Court recognized that conservatorship proceedings threaten a significant liberty interest. Consequently, the

court held the due process clause of the California Constitution requires that the criminal law standards of proof beyond a reasonable doubt and a unanimous jury verdict be applied to assure that LPS Act conservatorships are accurately established. (*Id.* at p. 235.) However, other criminal law concepts not mandated by due process have not been so extended. (*Conservatorship of Maldonado* (1985) 173 Cal.App.3d 144, 147-148 [218 Cal.Rptr. 796].) The goals of a conservatorship are vastly different from those of a criminal trial. (*Conservatorship of Gordon* (1989) 209 Cal.App.3d 364, 369 [257 Cal.Rptr. 365].) "We cannot overemphasize the importance of recognizing that a prospective conservatee is not a criminal defendant but, in many cases, a person in dire need of the state's assistance. A conservatorship proceeding is not a prosecution for a particular act, but an attempt to determine a condition which is subject to change." (*Conservatorship of Baber* (1984) 153 Cal.App.3d 542, 550 [200 Cal.Rptr. 262].) Thus, the disparate treatment conservatees and criminal defendants receive does not offend the equal protection clause of the Fourteenth Amendment, a component of due process. (*Conservatorship of Gordon, supra,* 209 Cal.App.3d at p. 369.)

■ As noted above, appellant's counsel waived both a jury trial and the Probate Code section 1828 advisements by oral consent in open court without a personal explicit waiver by appellant. However, unlike criminal proceedings, the right to a jury trial on a conservatorship petition exists only as provided by statute. (*Conservatorship of Maldonado, supra,* 173 Cal.App.3d 144, 147.) Since conservatorship proceedings were unknown to the common law at the time the California Constitution was adopted, there is no constitutional right to such a jury trial. (*Ibid.*) Therefore, an on-the-record personal waiver of a jury trial is not required from the proposed conservatee. Rather, counsel may validly waive the conservatee's right to a jury trial. (*Id.* at p. 148.)

Here, appellant's counsel stated he had spoken with his client and she wished to waive a jury trial. Appellant does not contend her attorney was without actual authority to waive a jury. Thus, the record supports the conclusion that the right to a jury trial on the conservatorship petition was validly waived.

Similarly, the advisements required under Probate Code section 1828 were created by the Legislature and, consequently, are not constitutionally required. (*Conservatorship of Moore* (1986) 185 Cal.App.3d 718, 732 [229 Cal.Rptr. 875].) Thus, the right to these advisements can also be validly waived by the proposed conservatee's counsel. It would be illogical to permit counsel to waive the right to a jury trial but not permit counsel to

waive the right to be informed by the court of the nature, purpose, and effect of the conservatorship proceedings.

Here, counsel agreed to waive the advisement of rights without indicating that he had discussed such a waiver with appellant. However, in the absence of evidence to the contrary, the court must assume counsel is competent. (*Conservatorship of Ivey* (1986) 186 Cal.App.3d 1559, 1566 [231 Cal.Rptr. 376].) This assumed competence includes fully communicating with the proposed conservatee about the entire proceeding. (*Ibid.*) Again, appellant does not contend her attorney was without authority to make such a waiver. Thus, the waiver was valid.

II.    *Substantial evidence supports the order finding appellant "gravely disabled" and imposing some disabilities.*\*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The order appointing a conservator is affirmed. The matter, however, is remanded for further proceedings concerning the restrictions on appellant's right to vote and right to refuse nonpsychiatric medical treatment.

Martin, Acting P. J., and Harris, J., concurred.

A petition for a rehearing was denied October 11, 1991.

---

\*See footnote, *ante*, page 265.