Filed 1/22/14  P. v. Abram CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038835 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 134185) |
| v. | |
| DANIEL NATHANIEL ABRAM, | |
| Defendant and Appellant. | |

Defendant Daniel Nathaniel Abram appeals from an order extending his involuntary commitment as a mentally disordered offender (MDO). He contends that insufficient evidence supports the order. He additionally contends that the trial court erred in failing to advise him of his right to a jury trial and in failing to obtain a personal waiver of that right. We will affirm.

**FACTUAL AND PROCEDURAL HISTORY**

On August 5, 1993, after serving a three-year prison sentence for second degree robbery (Pen. Code, §§ 211/212.5, subd. (b)),[1] defendant was involuntarily committed pursuant to the MDO Act (§ 2960 et seq.). Since then, the trial court has periodically extended his MDO commitment. On March 2, 2012, the Santa Clara County District Attorney filed a petition, pursuant to section 2970, to extend defendant's MDO

---

[1] Subsequent unspecified statutory references are to the Penal Code.

commitment for an additional year. A court trial on the petition commenced on July 26, 2012.

At the trial, Dr. Shakeel Khan, a psychiatrist at Napa State Hospital, testified as an expert in the diagnosis of mental disorders, the treatment of mental disorders, and risk assessment. Defendant is Dr. Khan's patient at Napa State Hospital, and at the time of trial Dr. Khan had treated defendant for two and a half years.

Dr. Khan diagnosed defendant with schizophrenia, disorganized type. He testified that defendant's condition is characterized by "marked disorganization of thought and behavior." He explained that defendant laughs and giggles for no apparent reason, talks to himself, paces the hallways, and sometimes speaks in a "very disjointed" manner. He also explained that defendant asks questions that do not make sense. For example, defendant has asked, "Am I turbo?" Dr. Khan noted that it is "very difficult" to have an intelligent conversation with defendant.

Dr. Khan testified that, due to the schizophrenia, defendant has a distorted perception of reality and poor impulse control. Defendant sometimes identifies himself as "Sasquatch" or "Turbo," and he does not appear to know who he is at times. In May 2011, defendant masturbated in front of the nurses' station while looking at female staff members. In June 2011, defendant ran through the hospital while yelling and knocking on doors.

Dr. Khan explained that defendant lacks understanding of his mental illness. Defendant "says he has no mental illness." He is unable to discuss his mental illness or the crime underlying his commitment. He goes to "very few" treatment groups at the hospital, and he has no relapse prevention plan. Dr. Khan testified that defendant takes several medications for his schizophrenia. He explained that defendant "has difficulty in compliance with the medication." He noted that defendant "lately" was "refusing the medication prescribed to him." During the six months before the trial, Dr. Khan had to

"struggle" with defendant to get him to take his medication. During the week before the trial, defendant twice refused to take his medication.

On occasions in 2009 when defendant refused to take his medication, defendant "quickly started showing more disorganization of his behavior." He challenged his peers, and his masturbating became more "prominent."

Dr. Khan testified that defendant would become dangerous if he stopped taking his medication, and Dr. Khan believed that defendant would stop taking his medication if he were released from the hospital without supervision. Dr. Khan opined that defendant would pose a substantial danger of physical harm to others if he were released into the community and stopped taking his medication. He explained that defendant does not understand that his medication prevents him from becoming violent.

At the conclusion of the trial, the trial court ordered defendant's MDO commitment to be extended for one year. Defendant now appeals from the commitment order.[2]

## DISCUSSION

Defendant contends that we must reverse the commitment order because there is insufficient evidence that he represents a substantial danger of physical harm to others. He contends that reversal of the commitment order is also necessary because the trial court failed to advise him of his right to a jury trial, the trial court failed to obtain his personal waiver of the jury trial right, and the resulting court trial violated the equal protection clause of the United States Constitution.

---

[2] The one-year commitment expired on August 5, 2013. Because the commitment has expired, the appeal is now technically moot. However, "we review the merits of appeals from timely filed petitions that are rendered technically moot during the pending of the appeal . . . because the appellant is subject to recertification as an MDO, and the issues are otherwise likely to evade review due to the time constraints of MDO commitments." (*People v. Merfield* (2007) 147 Cal.App.4th 1071, 1075, italics omitted.) We therefore will review the merits of defendant's claims.

3

We conclude that sufficient evidence supports the commitment order.  We also conclude that a personal waiver of the jury trial right was not required, the trial court's failure to advise defendant of the jury trial right did not result in a miscarriage of justice, and there was no equal protection violation.  We therefore will affirm.

**I.** *Sufficiency of the Evidence*

    **A.** *Standard of Review*

"In considering the sufficiency of the evidence to support MDO findings, an appellate court must determine whether, on the whole record, a rational trier of fact could have found that defendant is an MDO beyond a reasonable doubt, considering all the evidence in the light which is most favorable to the People, and drawing all inferences the trier could reasonably have made to support the finding.  [Citation.]  ' " 'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends.  [Citation.]  Thus, if the [finding] is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. . . .'  [Citation.]" ' "  (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082-1083.)

    **B.** *Sufficient Evidence Supports the Commitment Order*

Section 2972 mandates a one-year extension of an MDO's commitment if three criteria are satisfied:  "If the court or jury finds that the patient has a severe mental disorder, that the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others, the court shall order the patient recommitted to the facility in which the patient was confined at the time the petition was filed . . . .  The commitment shall be for a period of one year from the date of termination of . . . a previous commitment . . . ."  (§ 2972, subd. (c).)  Thus, a

4

recommitment "requires proof beyond a reasonable doubt that (1) the patient has a severe mental disorder; (2) the disorder 'is not in remission or cannot be kept in remission without treatment'; and (3) by reason of that disorder, the patient represents a substantial danger of physical harm to others." (*People v. Burroughs* (2005) 131 Cal.App.4th 1401, 1404.)

The "three criteria that must be satisfied for continued treatment relate . . . to the defendant's current condition." (*People v. Cobb* (2010) 48 Cal.4th 243, 252.) However, as used in section 2972, " 'substantial danger of physical harm' does not require proof of a recent overt act." (§ 2962, subd. (f).)

A qualified expert is "entitled to render an opinion on the criteria necessary for an MDO commitment." (*People v. Dodd* (2005) 133 Cal.App.4th 1564, 1569.) "A psychiatrist may and should take into account the prisoner's entire history in making an MDO evaluation. This includes prior violent offenses as well as the prisoner's mental health history." (*People v. Pace* (1994) 27 Cal.App.4th 795, 799.)

Here, contrary to defendant's assertion, there is sufficient evidence that defendant represents a substantial danger of physical harm to others. Dr. Khan testified that defendant suffers from schizophrenia, and that defendant has a distorted perception of reality, poor impulse control, disorganized thoughts, and disorganized behavior as a result of his schizophrenia. He explained that defendant would become dangerous if he stopped taking his medication. He noted that on past occasions when defendant stopped taking his medication, defendant acted in a challenging fashion, and his masturbating became more "prominent." Dr. Khan also explained that defendant "has difficulty in compliance with his medication," that it was a "struggle" to get defendant to take his medication during the six months before trial, and that defendant had recently been refusing to take his medication. Based on this recent history, Dr. Khan believed that defendant would stop taking his medication if he were released from the hospital. Dr. Khan finally opined

that defendant would pose a substantial danger of physical harm to others if he were released from the hospital and stopped taking his medication. The foregoing evidence— establishing defendant's recent refusal to take his medication, his likely noncompliance with his medication regimen if released from the hospital, and his dangerousness when not medicated—constitutes substantial evidence that defendant represents a substantial danger of physical harm to others. (See generally *People v. Turner* (2004) 34 Cal.4th 406, 425 [evidence is substantial, and will thus support the trier of fact's finding, if it is reasonable, credible, and of solid value].) We therefore conclude that sufficient evidence supports the commitment order.

## II. *Advisement and Waiver of the Right to a Jury Trial*

Defendant contends that the commitment order must be reversed because the trial court failed to advise him of his right to a jury trial and failed to obtain his personal waiver of the jury trial right.[3] In particular, he asserts that the use of the word "person" in section 2972 necessitates personal waiver of the right to a jury trial. In the alternative, he contends that even if section 2972 does not require personal waiver, the record does not show a jury trial waiver entered by an attorney appointed to act on his behalf. Finally, he briefly contends that the denial of a jury trial here was a violation of the equal protection clause of the United States Constitution.

### A. *Background*

The People filed the petition to extend defendant's MDO commitment on March 2, 2012. The trial court appointed a public defender to represent defendant on March 7, 2012. Defendant, who was hospitalized at Napa State Hospital, was not present

---

[3] We considered these issues in *People v. Blackburn* (2013) 215 Cal.App.4th 809, review granted August 14, 2013, S211078. Our Supreme Court has granted review in that case, and it will determine whether the trial court prejudicially erred in failing to advise the defendant of his right to jury trial and in failing to obtain a personal waiver of that right.

6

for the appointment of counsel.  Defense counsel waived defendant's presence at all pretrial proceedings.

At a pretrial hearing on July 6, 2012, defense counsel waived defendant's right to a jury trial.  She informed the court that she had spoken with defendant, and that she was waiving the jury trial right on defendant's behalf.  She further informed the court that defendant had signed and submitted a written jury trial waiver, but that the waiver did not bear a valid witness signature.  She stated that she would personally meet with defendant at Napa State Hospital during the upcoming week, and that she would confirm his jury trial waiver at that time.  Based on counsel's comments, the court set the matter for a court trial.

On July 13, 2012, defense counsel informed the court that she had personally met with defendant.  She told the court that, based on her meeting with defendant, the matter should proceed as a court trial.

Defendant first appeared in court on July 26, 2012, the date of the court trial.  The court did not advise defendant of his right to counsel and his right to a jury trial, nor did it obtain defendant's personal waiver of the jury trial right.

**B.** *The Statutory Framework and the Standard of Review*

Defendant's claim is predicated on the language of section 2972.  Section 2972 describes procedures that must be followed when a petition to extend an MDO commitment is filed.  As pertinent here, section 2972, subdivision (a) states, "The court shall advise the person of his or her right to be represented by an attorney and of the right to a jury trial."  Section 2972, subdivision (a) also states, "The trial shall be by jury unless waived by both the person and the district attorney."

Section 2972 specifies that a trial on a petition to extend an MDO commitment "shall be a civil hearing."  (§ 2972, subd. (a).)  Although the MDO Act "is in the Penal Code and makes some rules of criminal procedure applicable to commitment trials, an

7

MDO commitment is nevertheless a civil, not penal, proceeding." (*People v. Williams* (1999) 77 Cal.App.4th 436, 457.) Because an MDO commitment is a civil proceeding, an MDO's jury trial right may be waived " 'as prescribed by statute.' " (Cal. Const., art. I, § 16; see also *People v. Montoya* (2001) 86 Cal.App.4th 825, 830 (*Montoya*).) The right to a jury trial in an MDO proceeding has thus been deemed "purely statutory." (*People v. Johnwell* (2004) 121 Cal.App.4th 1267, 1276.)

The interpretation and application of a statute, such as section 2972 here, is a question of law. (*Amdahl Corp. v. County of Santa Clara* (2004) 116 Cal.App.4th 604, 611.) Questions of law are reviewed under the de novo standard of review. ( *Ibid.*)

**C.** *The Jury Trial Waiver was Valid*

Defendant cites no authority for the proposition that the use of the word "person" in section 2972 necessitates personal waiver of the jury trial right. Rather, cases have consistently held that the right to a jury trial in an MDO proceeding need not be personally waived by the MDO, and that counsel may waive the jury trial right on behalf of the MDO. (*Montoya, supra,* 86 Cal.App.4th at pp. 830-831; *People v. Otis* (1999) 70 Cal.App.4th 1174, 1175-1177.) Here, the record shows that defense counsel waived the right to a jury trial on defendant's behalf and with defendant's consent. When defense counsel waived the jury trial right, she informed the trial court that she had spoken with defendant, and that she was waiving the jury trial right on defendant's behalf. She further informed that court that defendant had signed and submitted an unwitnessed jury trial waiver form. After defense counsel waived the jury trial right, she met with defendant at Napa State Hospital in order to confirm the waiver. After the meeting, defense counsel informed the court that the matter should proceed as a court trial. Defendant was present at the court trial, and he never stated that he desired a jury trial. On this record, we must conclude that defendant consented to a court trial, and that defense counsel waived the right to a jury trial on defendant's behalf. (See generally *In re Conservatorship of Person*

*of John L.* (2010) 48 Cal.4th 131, 152 (*John L.*) [an attorney must "refrain from any act or representation that misleads the court"].) The jury trial waiver therefore was valid.

Citing the circumstance that he was not present for defense counsel's appointment and the circumstance that the court did not advise him of his right to counsel, defendant contends that the record fails to show a jury trial waiver entered by an attorney appointed to act on his behalf. We find no merit in defendant's contention. The record shows that the trial court appointed defense counsel to represent defendant, defense counsel met with defendant at Napa State Hospital, defense counsel discussed the jury trial waiver with defendant, and defense counsel waived the jury trial right with defendant's consent. Thus, the record demonstrates that defendant was made aware that defense counsel was representing him, and that defense counsel was in fact working on defendant's behalf. The circumstance that defendant was not present for defense counsel's appointment and the circumstance that the court did not advise defendant of his right to counsel do not negate the strong showing that defense counsel was authorized to enter a waiver on defendant's behalf. We therefore conclude that the waiver was entered by an attorney appointed to act on defendant's behalf.

### D. *The Lack of Advisement is Not Grounds for Reversal*

The trial court failed to advise defendant of his right to a jury trial, as required by section 2972. (See § 2972, subd. (a) [the trial court "shall advise the person of his . . . right to a jury trial"].) The error in failing to advise, however, is not grounds for reversal.

Before any judgment can be reversed for error under state law, it must appear that "the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801.) This means that reversal is justified "when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v.*

9

*Watson* (1956) 46 Cal.2d 818, 836.) There "is no presumption of prejudice," and "the burden to demonstrate prejudice is on the appellant." (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 528.)

Defendant's theory of prejudice appears to be that he would have chosen a jury trial if the court had advised him of his jury trial right, and that a jury would not have extended his MDO commitment. We are not persuaded by such a theory.

The record demonstrates that defense counsel advised defendant of his right to a jury trial. Defense counsel informed the court that she had discussed the jury trial waiver with defendant; such a discussion necessarily depended upon defense counsel informing defendant that the jury trial right existed. The circumstance that defendant signed a jury trial waiver, albeit an unwitnessed one, further shows that defense counsel apprised defendant of the jury trial right. Moreover, we must presume that defense counsel informed defendant of his rights. "Like all lawyers, the court-appointed attorney is obligated to keep her client fully informed about the proceedings at hand, *to advise the client of his rights,* and to vigorously advocate on his behalf." (*John L., supra,* 48 Cal.4th at pp. 151-152, italics added.) Absent a showing to the contrary, a "reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence." (*People v. Carter* (2003) 30 Cal.4th 1166, 1211; see also *Conservatorship of Mary K.* (1991) 234 Cal.App.3d 265, 272 ["in the absence of evidence to the contrary, the court must assume counsel is competent"].) We accordingly presume that defense counsel did in fact advise defendant of the jury trial right. Thus, on this record we must conclude that defendant was aware of his right to a jury trial. Given defendant's awareness of the jury trial right, we do not believe it is reasonably probable that he would have elected a jury trial if the court had advised him of the jury trial right.

Nor do we believe that it is reasonably probable that defendant would have achieved a more favorable result if his trial had been by jury. At the court trial, the

10

People presented strong evidence that defendant suffers from schizophrenia and is dangerous as a result of his schizophrenia. Dr. Khan testified that defendant currently suffers from symptoms of schizophrenia, defendant recently refused to take his medication, defendant acted in a challenging fashion and his masturbating became more "prominent" when he refused to take his medication, defendant would likely stop taking his medication if released from the hospital, and defendant would present a substantial danger of physical harm to others if he were released from the hospital and stopped taking his medication. Dr. Khan's testimony amply established the criteria to extend to defendant's MDO commitment. (See *People v. Bowers* (2006) 145 Cal.App.4th 870, 879 [a single psychiatric opinion that an individual is dangerous as a result of a mental disorder constitutes substantial evidence to support a commitment extension]; *People v. Superior Court* (*Williams*) (1991) 233 Cal.App.3d 477, 490 [same].) Defendant presented no evidence to contradict Dr. Khan's testimony, and the cross-examination of Dr. Khan did not discredit his testimony. Thus, we have no reason to believe that the result at a jury trial would have been different than the result reached at the court trial. We therefore cannot find the requisite reasonable probability of a more favorable result if the trial had been by jury. (See generally *People v. Cosgrove* (2002) 100 Cal.App.4th 1266, 1276 [error in holding a court trial, rather than a jury trial, on MDO criteria was harmless where the evidence supporting the MDO finding was overwhelming, the defendant presented no evidence, and the cross-examination of the People's experts had "minimal" effect in discrediting their testimony].)

For the foregoing reasons, we conclude that the court's failure to advise defendant of his jury trial right did not result in a miscarriage of justice. The failure to advise accordingly does not constitute reversible error.

11

**E.** *There Was No Equal Protection Violation*

Citing *Baxtrom v. Herold* (1965) 383 U.S. 107 (*Baxtrom*), defendant briefly contends that the lack of a jury trial here constituted a violation of the equal protection clause of the United States Constitution. In *Baxtrom*, the United States Supreme Court held that the "petitioner was denied equal protection of the laws by the statutory procedure under which a person may be civilly committed at the expiration of his penal sentence without the jury review available to all other persons civilly committed in New York." (*Id.* at p. 110.)

Defendant's case is distinguishable from *Baxtrom*. Section 2972 granted defendant the right to a jury trial, and defense counsel validly waived that right on defendant's behalf. Thus, this is not a situation where the statutory scheme denied defendant the right to a jury trial while granting the right to similarly situated individuals. Indeed, defendant fails to identify any way in which he was treated differently from similarly situated individuals. (See *People v. Wilkinson* (2004) 33 Cal.4th 821, 836 [to succeed on an equal protection claim, a defendant must show that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner].) We therefore conclude that there was no equal protection violation.

## DISPOSITION

The order extending defendant's MDO commitment is affirmed.

_____
RUSHING, P.J.

WE CONCUR:

_____
PREMO, J.

_____
MÁRQUEZ, J.

13