Filed 12/14/20  Conservatorship of G.M. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| Conservatorship of the Person of G.M. | B304894 |
| | (Los Angeles County Super. Ct. No. 20HWMH00068) |
| PUBLIC GUARDIAN OF LOS ANGELES COUNTY, | |
| Petitioner and Respondent, | |
| v. | |
| G.M., | |
| Objector and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Donna Groman, Judge.  Reversed and remanded with directions.

Jean Matulis, under appointment by the Court of Appeal, for Objector and Appellant.

Mary C. Wickham, County Counsel, Lauren Black, Assistant County Counsel, and William C. Sias, Senior Deputy County Counsel, for Petitioner and Respondent.

Ellen S. Finkelberg for Conservator S.M.

At a hearing on a petition to appoint a conservator for G.M. under the Lanterman-Petris-Short (LPS) Act, which authorizes such an appointment when the person in question is gravely disabled as a result of a mental disorder, G.M.'s attorney said he informed her of her right to a jury trial and she agreed to a one-year conservatorship. The trial court granted the petition without advising G.M. of her rights on the record and without finding she lacked capacity to personally waive her right to a jury trial. We consider whether the conservatorship was validly imposed under these circumstances.

## I. BACKGROUND[1]

The Los Angeles City Attorney filed a misdemeanor complaint against G.M. in September 2019.[2] G.M.'s attorney in the criminal matter declared a doubt as to her competence. The trial court found G.M. was not competent to stand trial and there was no substantial likelihood she would be restored to competency by the maximum commitment date. The court ordered the Public Guardian to investigate G.M.'s suitability for a conservatorship under the LPS Act.

---

[1] The Public Guardian of Los Angeles County (Public Guardian) asks us to take judicial notice of documents from Los Angeles Superior Court case numbers 9CJ08511 and ZM054981. The request is granted. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

[2] G.M. was charged with vandalism (Pen. Code, § 594), defrauding an innkeeper (Pen. Code, § 537, subd. (a)(1)), and two counts of battery (Pen. Code, § 242).

The Public Guardian reported G.M. appeared to meet the criteria for a temporary conservatorship and requested additional time to conduct a clinical assessment. The court obliged. After completing the assessment, the Public Guardian reported it intended to petition for conservatorship. The competency proceedings were terminated and G.M. remained in custody.

The Public Guardian filed a petition for conservatorship of the person and estate of G.M. in January 2020. A report accompanying the petition stated G.M. suffered from schizoaffective disorder, which produced symptoms including disorganized and delusional thinking, auditory hallucinations, agitation, poor hygiene, poor insight, poor compliance with treatment, impaired thought process, and impaired activity of daily living. A later-prepared report further revealed G.M. had an "extensive" history of psychiatric hospitalizations.

The Public Guardian opined G.M. could not be safely treated in a voluntary setting, pointing in part to her assertion that she did not plan to continue treatment or medication if and when released from custody.[3] The Public Guardian concluded G.M. was gravely disabled and recommended appointment of the Public Guardian's office as her conservator. The Public Guardian also noted G.M.'s daughter, S.M., was willing to serve as her conservator.

At the hearing on the Public Guardian's petition, G.M. was present and represented by the same attorney who represented

---

[3]     In December 2019, G.M. told an investigator from the Public Guardian's office that she did not want a conservatorship and yelled and banged on her cell door until the interview was terminated. The investigator also reported G.M. was refusing medication.

4

her in the criminal competency proceedings. G.M.'s attorney stated: "I discussed the rights and disabilities with [G.M.], and also her right to either a court or jury trial, and that her daughter wanted to be appointed as her conservator. And [she] indicated to me that if her daughter was appointed as a conservator, that she would agree to a one-year conservatorship." Without any further advisement of rights on the record or inquiry of G.M. personally, the court appointed S.M. conservator with powers to, among other things, place G.M. in a locked facility and require her to accept treatment and psychotropic medication. The court also imposed disabilities preventing G.M. from, among other things, refusing to consent to treatment.

## II. DISCUSSION

The LPS Act requires a trial court to advise a proposed conservatee of their right to a jury trial and to consult the proposed conservatee regarding the conservatorship. These requirements went unheeded, and the representations by counsel (not by G.M. personally) at the pertinent hearing were not an adequate substitute absent an express finding—and there was none—that G.M. was incapable of understanding an advisement of rights or articulating a preference regarding the contemplated conservatorship. We shall therefore reverse to permit the trial court to make a finding about G.M.'s capacity to participate in the colloquy required by the LPS Act; unless the court determines G.M. was incapable of such participation, the court shall conduct the colloquy anew before entering any new conservatorship order.

5

*A.     The Trial Court Erred By Not Advising and Consulting with G.M. As Required by the Probate Code*

The LPS Act authorizes the appointment of a conservator for up to one year if a person is found to be "gravely disabled as a result of a mental health disorder" (Welf. & Inst. Code, § 5350 (hereafter Section 5350)), meaning the person is unable to provide for her or his basic personal needs for food, clothing, or shelter (Welf. & Inst. Code, § 5008, subd. (h)(1)(A)).[4]  The proposed conservatee has "the right to demand a court or jury trial on the issue of whether he or she is gravely disabled." (§ 5350, subd. (d)(1).)  If a trial is held, the petitioner must prove the proposed conservatee is gravely disabled beyond a reasonable doubt.  (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1009, citing *Conservatorship of Roulet* (1979) 23 Cal.3d 219.)

Subject to exceptions not applicable in this case, a trial court "shall inform the proposed conservatee" that he or she has "the right to oppose the proceeding, to have the matter of the establishment of the conservatorship tried by jury, to be represented by legal counsel if the proposed conservatee so chooses, and to have legal counsel appointed by the court if unable to retain legal counsel." (Prob. Code, § 1828 (hereafter Section 1828), subd. (a)(6).[5])  After the court advises the proposed conservatee of these rights, it "shall consult the proposed

---

[4]     Alternative definitions of "gravely disabled" set forth in Welfare and Institutions Code section 5008, subdivision (h) do not apply to this case.

[5]     Section 1828 applies to LPS proceedings pursuant to Section 5350.

6

conservatee to determine the proposed conservatee's opinion concerning," among other things, "[t]he establishment of the conservatorship" and "[t]he appointment of the proposed conservator." (§ 1828, subd. (b).)

Courts have reached different conclusions as to whether a proposed LPS conservatee who is not found to lack capacity must personally waive the right to a jury trial. We will briefly review these decisions, but we ultimately do not need to take sides here because compliance with Section 1828's advise-and-consult provisions informs a proposed conservatee's decision about whether to invoke his or her jury trial right—and such compliance was lacking here.

In a 1991 case, *Conservatorship of Mary K.* (1991) 234 Cal.App.3d 265 (*Mary K.*), the Court of Appeal considered whether an attorney could validly waive a proposed conservatee's right to a jury trial when the attorney "stated he had spoken with his client and she wished to waive a jury trial" and the conservatee did "not contend her attorney was without actual authority to waive a jury." (*Id*. at 271.) The Court of Appeal held: "[U]nlike criminal proceedings, the right to a jury trial on a conservatorship petition exists only as provided by statute. [Citation.] Since conservatorship proceedings were unknown to the common law at the time the California Constitution was adopted, there is no constitutional right to such a jury trial. [Citation.] Therefore, an on-the-record personal waiver of a jury trial is not required from the proposed conservatee." (*Ibid*.) Similarly, because the requirement that the court advise a proposed conservatee of her right to a jury trial is statutory rather than constitutional, "the right to [this] advisement[ ] can

7

also be validly waived by the proposed conservatee's counsel." (*Ibid.*)

After *Mary K.*, our Supreme Court decided two cases addressing whether a personal jury trial waiver is required in relevant but not identical circumstances to those involving the LPS Act question here. (*People v. Tran* (2015) 61 Cal.4th 1160 (*Tran*); *People v. Blackburn* (2015) 61 Cal.4th 1113 (*Blackburn*).) In *Blackburn*, our Supreme Court considered whether counsel for a mentally disordered offender (MDO) may validly waive the offender's right to a jury trial in proceedings to extend involuntary commitment beyond termination of parole. (*Blackburn*, *supra*, at 1116.) The Supreme Court held, relying on the key penal statute there implicated (Pen. Code, § 2972) that "the trial court must elicit the waiver decision from the defendant in a court proceeding unless it finds substantial evidence of incompetence, in which case counsel controls the waiver decision." (*Blackburn*, *supra*, at 1131; see also *id*. at 1130 [expressly rejecting the holding by the court below that "waiver by counsel . . . 'at the [defendant's] direction or with the [defendant's] knowledge and consent'" would be sufficient].) In *Tran*, the Supreme Court held that "nearly identical language in the statutory scheme for extending the involuntary commitment of a person originally committed after pleading not guilty by reason of insanity (NGI) to a criminal offense" has the same meaning as the statutory language discussed in *Blackburn*. (*Tran, supra*, at 1163.) As in *Blackburn*, the Court emphasized that "the purpose of advising a defendant of a particular right is to enable the defendant to make an informed choice about whether to waive that right . . . ." (*Id*. at 1166.)

8

Following *Blackburn* and *Tran*, Court of Appeal panels have held the Supreme Court's analysis of the necessity of a personal waiver in the MDO and NGI contexts applies to proposed LPS conservatees. In *Kevin A.*, a proposed LPS conservatee demanded a jury trial, but the trial court accepted his attorney's waiver of a jury trial over his objection. (*Conservatorship of Kevin A.* (2015) 240 Cal.App.4th 1241, 1247-1248.) Though conceding the LPS Act statutory language "differs somewhat" from that at issue in *Blackburn* and *Tran*, the *Kevin A.* court reversed, holding the Supreme Court's reasoning in *Blackburn* and *Tran* should control. (*Id.* at 1248, 1251 [error to accept an attorney waiver over the conservatee's express wishes and without a specific finding that the conservatee lacked the capacity to make this decision for himself].) Significantly for our purposes, the *Kevin A.* opinion also emphasizes a trial court is required to advise a proposed LPS conservatee of his or her right to a jury trial and to consult with the proposed conservatee to seek his or her views regarding the establishment of the conservatorship. (*Id.* at 1249, citing § 1828, subds. (a)(6), (b)(1)-(3).) The *Kevin A.* court reconciled the conclusion it reached with the holding in *Mary K.*, *supra*, 234 Cal.App.3d 265 by observing the conservatee in *Mary K.* "herself wanted a court trial rather than a jury trial"—as indicated by her attorney—whereas the conservatee in *Kevin A.* "expressed a desire contrary to that expressed by his attorney, and in no way sought to waive a right afforded him." (*Id.* at 1251-1252.)

In another case, *Conservatorship of Heather W.* (2016) 245 Cal.App.4th 378, the Court of Appeal considered whether a conservatee's attorney validly waived her right to a jury trial when, unlike the conservatee in *Kevin A.*, she did not express a

9

preference for a jury trial. (*Id*. at 381 [explaining that at a hearing to extend her conservatorship, the trial court advised the conservatee of her right to testify, but not her right to a jury trial].) Citing Section 1828, subdivision (a)(6) (the provision requiring a court to advise a proposed conservatee of his or her rights, including the right to a jury trial), the Court of Appeal relied on *Blackburn* and *Tran* and reversed because "the trial judge did not give such an advisement to Heather W. and obtain her personal waiver of that right." (*Id*. at 384.) The *Heather W.* court distinguished *Mary K.*, *supra*, 234 Cal.App.3d 265, because that case was decided before *Blackburn* and *Tran* and involved different facts. (*Id*. at 384 ["In *Mary K.*, 'counsel stated he had spoken with his client and she wished to waive a jury trial'"].)

We need not decide whether, when holding a personal waiver of the jury trial right is required, *Kevin A.* and *Heather W.* fully grapple with the differences between the LPS Act statutory scheme and the MDO and NGI statutes at issue in *Blackburn* and *Tran*. That is because two provisions of Section 1828 make clear that the right to demand a jury trial under Section 5350 does not exist merely to accommodate a proposed conservatee who spontaneously asserts their rights. Rather, a trial court must inform every proposed conservatee of their right to demand a jury trial (§ 1828, subd. (a)(6)) and, "[a]fter the court so informs the proposed conservatee . . . , consult the proposed conservatee to determine the proposed conservatee's opinion" regarding "[t]he establishment of the conservatorship." (§ 1828, subd. (b)(1).) These advise-and-consult provisions of Section 1828 give vitality to the jury trial right granted by Section 5350.

Section 1828's advise-and-consult mandate was not followed here. The Public Guardian and the conservator, S.M.,

10

say that does not matter because G.M.'s trial counsel stated he had advised her of her rights and she consented to the conservatorship.[6]  But that is not enough.  In enacting Section 1828, and subdivision (a)(6) of that statute in particular, the Legislature was obviously concerned with ensuring a proposed conservatee (who is likely experiencing at least some mental difficulties) receives a situationally appropriate advisement of his or her rights given the significant deprivation of liberty that a conservatorship entails, and the Legislature determined an advisement and consultation in open court was the appropriate means to reliably achieve that end.  The Public Guardian also argues the trial court was not required to advise and consult with G.M. because the finding that she was not competent in the related criminal proceeding means such an advisement and consultation would have been fruitless.[7]  The trial court here, however, made no finding G.M. was incapable of understanding a court-provided jury trial advisement or of participating in a consultation about her views on the establishment of a conservatorship, and a determination under the different

---

[6]     These arguments appear to be rooted in a constitutional due process analysis, but the question here is really concerned with what the Probate Code requires.

[7]     At the last competency hearing in the criminal case, which took place in November 2019, the criminal court found there was no substantial likelihood G.M. would be restored to competency by July 2020, the maximum commitment date.  As of early December 2019, G.M. was refusing medication.  The LPS Act hearing at issue in this appeal was held at the end of January 2020.

11

criminal competency standard is no adequate proxy.[8] (Pen. Code, § 1367 ["A defendant is mentally incompetent for purposes of this chapter if, as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner"].) We are therefore of the view that the noncompliance with Section 1828's advise-and-consult requirement was error.

### B. The Error Requires Reversal

Having held there was error, the question now is whether the error requires reversal. In *Blackburn*, the Supreme Court held the failure to obtain a valid jury trial waiver in the MDO context completely denied the defendant his right to a jury trial. (*Blackburn, supra*, 61 Cal.4th at 1136.) Such an error results in a miscarriage of justice and requires reversal unless there is "substantial evidence that the defendant lacked that capacity at the time of counsel's waiver." (*Ibid.*) The Court reached a similar conclusion in the NGI context in *Tran*, and emphasized "the requirement of an *affirmative* showing means that no valid waiver may be presumed from a silent record." (*Tran, supra*, 61 Cal.4th at 1170.)

Here, the trial court's failure to advise and consult with G.M. regarding her right to a jury trial requires reversal unless

---

[8] There is some evidence in the record that would tend to indicate G.M. was not completely incapable of expressing her own views about imposition of a conservatorship: G.M. told an investigator from the Public Guardian's office that she did not want a conservatorship (just before yelling and banging on her cell door).

12

the record affirmatively shows there was substantial evidence that she lacked the capacity to make a knowing and voluntary waiver at the time of her attorney's waiver.  The Public Guardian again contends the competency proceedings that resulted in a referral to assess G.M.'s suitability for an LPS conservatorship provide such evidence.

As our discussion thus far foreshadows, we reject this harmlessness argument.  The November 2019 incompetency finding—made pursuant to the standard for competence in a criminal case—is not substantial evidence G.M. was incapable in January 2020 of understanding a right to a jury trial or of expressing any views on the proposed conservatorship.

## DISPOSITION

The trial court's order granting the petition for conservatorship is reversed.  On remand, the trial court shall determine whether G.M. lacked sufficient capacity to participate in, or benefit from, the advise-and-consult requirement in Section 1828 at the time of the January 2020 hearing.  The trial court may take additional evidence, if it so chooses, and the court may reinstate its order if it determines G.M. lacked such capacity.  (*Heather W.*, *supra*, 245 Cal.App.4th at 385; see also *Blackburn*, *supra*, 61 Cal.4th at 1137; *Tran*, *supra*, 61 Cal.4th at 1170.)  If, however, the court determines G.M. did have sufficient capacity to participate in, or benefit from, the advise-and-consult requirement in Section 1828, the court shall conduct a new colloquy complying with Section 1828 before making any new conservatorship order.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:


RUBIN, P. J.


MOOR, J.

14