Filed 2/14/24  Conservatorship of C.M. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| Conservatorship of the Person and Estate of C.M. | C097458 |
| TEHAMA COUNTY PUBLIC GUARDIAN, Petitioner and Respondent, v. C.M., Objector and Appellant. | (Super. Ct. No. 21PR000105) |

C.M. appeals from an order issued after a bench trial appointing a conservator over her person and estate under the Lanterman-Petris-Short Act (LPS Act) pursuant to Welfare & Institutions Code section 5000 et seq.[1]  C.M. contends that the order should be reversed because she did not knowingly and intelligently waive her right to a jury trial. Because we conclude that the jury trial waiver was invalid, we will reverse the order.

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

## I. BACKGROUND

On August 5, 2021, the Tehama County Public Guardian (Public Guardian) petitioned to be appointed as C.M.'s conservator under the LPS Act. At a trial readiness hearing, C.M.'s appointed counsel demanded, in C.M.'s presence, a "trial by judge." The trial was held on October 28, 2021, after which the court determined C.M. was gravely disabled and appointed the Public Guardian as C.M.'s conservator.

On September 13, 2022, the Public Guardian petitioned to be reappointed as C.M.'s conservator. On September 19, 2022, C.M. was served with a citation for conservatorship, which informed her that she "ha[d] the right to a jury trial if [she] wish[ed]." At a hearing on October 24, 2022, C.M.'s appointed counsel informed the court "we would like to set this matter for court trial." C.M. was not present at this hearing. Appointed counsel did not advise the court that the decision to seek a court trial had been discussed with C.M. At no point in the proceedings, at this hearing or otherwise, did the trial court advise C.M. of her right to a jury trial or obtain a personal waiver of that right from C.M.

At the trial on November 3, 2022, Dr. Heather O'Connell opined that, in her expert opinion, C.M. continued to meet the criteria for a conservatorship. C.M. also testified on her own behalf. Throughout her testimony, C.M. repeatedly said she would like to go to trial. She also repeatedly said that she was innocent and "pleads not guilty." The court asked C.M. whether she understood "that we are in trial right now"? C.M. responded, "Well, there isn't any jury . . . ." The court also asked whether C.M. was referring to a separate criminal matter in which she was involved. C.M. responded, "I think it's all because I feel that I've been wrongfully done in court, and I would like to have a trial. I really do. I haven't had a trial yet with juries and everything." The court then stated, "So you're asking for a jury trial in your criminal matter?" C.M. responded, "What – Christopher Logan said he took all of that off of me." The court repeated, "So, [C.M.], this is your conservatorship trial, and you're asking that you get a jury trial in

2

your criminal matter; is that correct?" C.M. responded, "Well, I feel I've been done wrong in court." Counsel for C.M. then stated, "And, your Honor, I would like to . . . have the Court take judicial notice that a criminal matter was dismissed and [C.M.] was represented by Mr. Logan."

The trial court again found C.M. to be gravely disabled and granted the petition for conservatorship, which was scheduled to terminate on November 3, 2023. C.M. timely appealed.

## II. DISCUSSION

Defendant argues she did not knowingly and intelligently waive her right to a jury for her conservatorship trial on November 3, 2022. We agree.

Before turning to the merits of defendant's claim, we must address two threshold matters. First is the question of mootness. The challenged conservatorship ended on November 3, 2023, rendering this appeal "technically moot." (*Conservatorship of K.P.* (2021) 11 Cal.5th 695, 705, fn. 3.) As our Supreme Court has recognized, "This problem frequently arises because a conservatorship's duration is short, compared to the appellate process." (*Ibid.*) Because the issue raised is one capable of recurring but likely to evade review, we decline to dismiss this appeal for mootness. (See *ibid.*; *Conservatorship of John L.* (2010) 48 Cal.4th 131, 142, fn. 2.)

Second, to the extent defendant argues that the due process clause of the California Constitution requires a personal jury trial waiver in LPS Act commitment proceedings, we reject that assertion. While the liberty interest at stake in conservatorship proceedings implicates constitutional concerns, the specific question of whether the trial court must elicit a personal waiver from a prospective conservatee is determined by the provisions of the LPS Act itself. (See *Conservatorship of C.O.* (2021) 71 Cal.App.5th 894, 914 (*C.O.*) ["we do not agree that a trial court's failure to obtain a personal waiver on the record of the proposed conservatee's right to a jury trial violates a constitutional due process

3

right"]; see also *Conservatorship of Maldonado* (1985) 173 Cal.App.3d 144, 147-148.) Thus, we turn to the LPS Act to resolve this issue.

The LPS Act " 'governs the involuntary treatment of the mentally ill in California.' [Citation.] The act 'provides one-year conservatorships for those "gravely disabled as a result of a mental health disorder or impairment by chronic alcoholism." (§ 5350.)' " (*C.O.*, *supra*, 71 Cal.App.5th at p. 904.) A proposed conservatee has "the right to demand a court or jury trial on the issue of whether the person is gravely disabled" and that "right . . . also appl[ies] in subsequent proceedings to reestablish conservatorship." (§ 5350, subd. (d)(1), (d)(3).) Further, the LPS Act incorporates Probate Code section 1828, subdivision (a)(6), which provides that "the court shall inform the proposed conservatee of . . . [¶] . . . [¶] . . . the right . . . to have the matter of the establishment of the conservatorship tried by jury . . . ." (Prob. Code, § 1828, subd. (a); see also *C.O.*, at p. 908 [interpreting provision as "requir[ing] a trial court to personally advise a proposed conservatee of [their] jury trial right"].) That said, the right to a jury trial in LPS Act commitment proceedings may be waived. (*C.O.*, at pp. 905-907.)

Appellate courts considering the adequacy of jury trial waivers in LPS Act commitment proceedings have typically applied the standard for jury trial waivers in criminal proceedings. (See, e.g., *Conservatorship of Joanne R.* (2021) 72 Cal.App.5th 1009, 1017; *C.O., supra*, 71 Cal.App.5th at pp. 918-919.) In a criminal proceeding, " 'a defendant's waiver of the right to jury trial may not be accepted by the court unless it is knowing and intelligent, that is, " ' "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it," ' " as well as voluntary " ' "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." ' " ' " (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166.) In determining whether a criminal defendant has provided a knowing and intelligent waiver, courts consider " 'the unique circumstances of each case' " and

4

"examine the totality of the circumstances." (*Id*. at pp. 166-167.) The parties here both assert this standard applies to LPS Act commitment proceedings. We will thus examine the totality of the circumstances to decide whether C.M.'s jury trial waiver was knowing and intelligent.

Appellate courts disagree as to the requirements for a jury trial waiver in LPS Act commitment proceedings. In *Conservatorship of Heather W.* (2016) 245 Cal.App.4th 378, the trial court did not advise the conservatee of her right to a jury trial and did not obtain a personal waiver of that right. The appellate court reversed and remanded the matter, holding that, "In conservatorship proceedings pursuant to the LPS Act, the trial court must obtain a personal waiver of a jury trial from the conservatee, even when the conservatee expresses no preference for a jury trial. Absent such a waiver, the court must accord the conservatee a jury trial unless the court finds the conservatee lacks the capacity to make such a decision." (*Id*. at p. 381; see also *Conservatorship of Kevin A.* (2015) 240 Cal.App.4th 1241, 1250-1251.)

The appellate court in *C.O.* departed from *Heather W.*'s personal waiver requirement. In *C.O.*, C.O.'s counsel told the trial court, in C.O.'s presence, that he had spoken to C.O. before the hearing and that C.O. wanted a court trial rather than a jury trial. (*C.O., supra*, 71 Cal.App.5th at p. 902.) The trial court set the matter for a court trial but did not advise C.O. of his right to a jury trial or elicit a personal waiver of that right from him. (*Ibid*.) Based on its interpretation of the LPS Act statutory scheme, the appellate court held that "absent circumstances suggesting the proposed conservatee's counsel lacked actual authority, counsel disregarded his client's wishes, or that the proposed conservatee was actually unaware of his right to a trial by jury[,] counsel may waive on behalf of the proposed conservatee his or her right to have the matter of establishment or reestablishment of the conservatorship decided by jury trial." (*Id*. at p. 911; see also *Conservatorship of Mary K.* (1991) 234 Cal.App.3d 265, 271 [valid waiver of jury trial by counsel who "stated he had spoken with his client and she wished

5

to waive a jury trial"].) In upholding the waiver, the court "emphasize[d] that there is no evidence in the record that C.O. desired a jury trial, that C.O. was actually unaware of his right to jury trial, or that his attorney elected to proceed with a court trial over C.O.'s objection." (*C.O., supra*, 71 Cal.App.5th at p. 913.) The court distinguished *Heather W.* "because there was no indication in the trial court proceedings in that case of the proposed conservatee's wishes or any evidence that the conservatee's attorney had consulted with the conservatee." (*Ibid.*)

In the present case, the trial court did not advise C.M. of her right to a jury trial and did not obtain a personal jury trial waiver from her. At a pretrial hearing, C.M.'s counsel told the court "we would like to set this matter for [a] court trial." But unlike in *C.O.*, C.M. was not present at the hearing and the record does not reflect that this decision was ever discussed with C.M. Further, also unlike in *C.O.*, there is some affirmative indication C.M. wanted a jury trial. When asked during her testimony if she understood she was at a trial, C.M. responded, "Yes. Well, there isn't any jury . . . [¶] . . . [¶] . . . I feel that I've been wrongfully done in court, and I would like to have a trial. I really do. I haven't had a trial yet with juries and everything." While the court and C.M.'s counsel believed C.M. was referencing a separate criminal matter, the testimony is not clear as to which proceeding C.M. wanted a jury trial, particularly given C.M.'s response that counsel in her criminal matter said "he took all of that off of [C.M.]" This statement by C.M., combined with counsel's request the court take judicial notice that the criminal matter was dismissed, further indicates C.M. wanted a jury trial in the conservatorship case.

The Public Guardian urges us to conclude that the waiver here was valid, pointing to the written citation served on C.M. stating she had the right to a jury trial and the fact that C.M. was present when her counsel waived her right to a jury trial at the prior conservatorship trial. Though these are relevant considerations, we nonetheless find, under the totality of the circumstances, that the jury trial waiver was not adequate.

Generally, the failure "to obtain a valid jury trial waiver . . . denies the defendant his or her statutory right to a jury trial on the entire cause in a civil commitment proceeding." (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1132.)  This error "defies ordinary harmless error analysis" (*id.* at p. 1134) and is a " 'miscarriage of justice' within the meaning of California Constitution, article VI, section 13 [that] requires reversal without inquiry into the strength of the evidence in a particular case." (*Id.* at pp. 1132-1133; see *id.* at pp. 1132-1134 [reversing for failure to obtain valid jury trial waiver from mentally disordered offender in civil commitment proceeding]; see also *People v. Tran* (2015) 61 Cal.4th 1160, 1169 [invalid jury trial waiver in commitment proceeding for defendant who pleaded not guilty by reason of insanity "is not susceptible to ordinary harmless error analysis and automatically requires reversal"]; *Conservatorship of Kevin A., supra*, 240 Cal.App.4th at p. 1253.)  Accordingly, we reverse.

### III.  DISPOSITION

The order granting the petition for conservatorship is reversed.


/s/
ASHWORTH, J.*


We concur:


/s/
EARL, P. J.


/s/
KRAUSE, J.

---

*        Judge of the El Dorado County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7