Filed 10/1/15

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| Conservatorship of the Person and Estate of KEVIN A. | |
| YVONNIA BROWN, as Public Conservator, etc., | F070914 |
| Petitioner and Respondent, | (Super. Ct. No. P25860) |
| v. | **OPINION** |
| KEVIN A., | |
| Objector and Appellant. | |

APPEAL from an order of the Superior Court of Merced County.  John D. Kirihara, Judge.

Paul Bernstein, under appointment by the Court of Appeal, for Objector and Appellant.

James N. Fincher, County Counsel, and Forrest W. Hansen, Deputy County Counsel, for Petitioner and Respondent.

-ooOoo-

## INTRODUCTION

Kevin A. appeals from an order granting the petition of Yvonnia Brown, the Public Conservator of Merced County (Public Conservator) to reestablish conservatorship for a one-year period, finding him to be gravely disabled under the Lanterman-Petris-Short Act (LPS) (Welf. & Inst. Code, § 5000 et seq.).[1] Kevin A. argues the court erred in accepting a waiver of jury trial over his objection and request. In light of the recent California Supreme Court decisions in *People v. Blackburn* (2015) 61 Cal.4th 1113 and *People v. Tran* (2015) 61 Cal.4th 1160, we agree and reverse the order granting the petition.

## RELEVANT BACKGROUND

Conservatorship over Kevin A. was initiated in 2006. For the majority of the time that followed, Kevin A. remained in conservatorship. However, in June 2013, a jury found Kevin A. was not gravely disabled and, as a result, conservatorship was terminated.

In August 2014, the Public Conservator reinitiated conservatorship proceedings by filing a petition for reappointment of conservatorship over Kevin A.'s person and estate pursuant to section 5361.[2] The petition alleged Kevin A. remained gravely disabled as a

---

[1]All further statutory references are to the Welfare and Institutions Code unless indicated otherwise.

[2]"Conservatorship initiated pursuant to this chapter shall automatically terminate one year after the appointment of the conservator by the superior court. The period of service of a temporary conservator shall not be included in the one-year period. Where the conservator has been appointed as conservator of the estate, the conservator shall, for a reasonable time, continue to have such power and authority over the estate as the superior court, on petition by the conservator, may deem necessary for (1) the collection of assets or income which accrued during the period of conservatorship, but were uncollected before the date of termination, (2) the payment of expenses which accrued during period of conservatorship and of which the conservator was notified prior to termination, but were unpaid before the date of termination, and (3) the completion of sales of real property where the only act remaining at the date of termination is the actual transfer of title. If upon the termination of an initial or a succeeding period of conservatorship the conservator determines that conservatorship is still required, he may petition the superior court for his reappointment as conservator for a succeeding one-year period. The petition must include the opinion of two physicians or licensed psychologists who

2.

result of a mental disorder. It also sought the denial of certain rights and privileges to Kevin A., including the privilege of possessing a license to operate a motor vehicle, the right to enter into transactions in excess of $50, the right to refuse psychiatric treatment, the right to refuse or consent to treatment of the conservatee's disability or other medical treatment, and the right to possess a firearm.

Specifically, two physicians opined Kevin A. was gravely disabled. Darryl Chagi, M.D., stated Kevin A. "presents symptoms of persecutory delusions, paranoia, poor insight, and low distress tolerance. [Kevin A.] has a significant history of responding to belief system with physical aggression and dangerous behaviors. Due to the fact that he does not believe he has a mental illness, it is unlikely he will remain med compliant without supervision." Dr. Chagi opined Kevin A. should be prohibited from possessing a firearm and from giving informed consent regarding his psychiatric treatment or medical treatment. Further, he was not competent to enter a contract and should not be permitted to operate a motor vehicle as a result of his grave disability. John A. Engers, M.D., also opined Kevin A. should be prohibited from possessing a firearm and from giving informed consent regarding his psychiatric treatment or medical treatment, he was not competent to enter a contract, and should not be permitted to operate a motor vehicle as a result of his grave disability. Dr. Engers stated Kevin A. "presents very poor insight and decision making about mental illness. Due to poor insight, it has caused him to participate in aggressive behaviors towards others. He is unable to participate in a

---

have a doctoral degree in psychology and at least five years of postgraduate experience in the diagnosis and treatment of emotional and mental disorders that the conservatee is still gravely disabled as a result of mental disorder or impairment by chronic alcoholism. In the event that the conservator is unable to obtain the opinion of two physicians or psychologists, he shall request that the court appoint them.

"Any facility in which a conservatee is placed must release the conservatee at his request when the conservatorship terminates. A petition for reappointment filed by the conservator or a petition for appointment filed by a public guardian shall be transmitted to the facility at least 30 days before the automatic termination date. The facility may detain the conservatee after the end of the termination date only if the conservatorship proceedings have not been completed and the court orders the conservatee to be held until the proceedings have been completed."

meaningful conversation about means for providing food, clothing and shelter at this time."

Psychiatrist Isabel Manuel, Social Worker Vong Chang, Deputy Sheriff Jose Andrade, and Kevin A. testified at trial. More specifically, Dr. Manuel testified concerning Kevin A.'s diagnosis of schizoaffective disorder and his history of conservatorship since 2006, his refusal to take medications, and his assaultive conduct. She opined Kevin A. was gravely disabled because she did not believe he "would be able to provide for his basic needs if he were allowed off conservatorship." Vong Chang testified Kevin A., whom he sees at least once a week, was not ready to live independently. Chang testified regarding Kevin A.'s numerous failed placements in locked facilities and his refusal regarding an augmented board and care facility option. Deputy Andrade testified regarding the events of August 2013, wherein Kevin A. was believed to have assaulted his elderly mother and caused damage to a neighbor's property. The deputy also testified about Kevin A.'s actions and demeanor on that occasion. Finally, Kevin A. testified concerning his education and career with the mental health department as a licensed clinical social worker prior to the commencement of conservatorship proceedings. Kevin A. further testified his diagnosis of his mental illness is "autism … the belief that you can't speak out the emotions you feel," and he believed he also suffered from "Asperger's … [the] insight you have about how you speak out." He did not agree with the earlier diagnoses of schizophrenia and paranoia, noting the "diagnosis has changed throughout the course of [his] treatment." Kevin A. also testified about his plan for living independently were the conservatorship to end.

Following the court trial, the petition was granted and the Public Conservator was reappointed for the period between December 18, 2014, and December 18, 2015. Kevin A. was to be detained at the Marie Green Psychiatric Center. It was further ordered Kevin A. not possess a driver's license, not enter into a contract or transaction involving more than $50, that he have neither the right to refuse nor consent to treatment

relating to his grave disability or routine medical treatment, and that he not possess a firearm. This appeal followed.

**DISCUSSION**

**Waiver of Jury Trial**

Kevin A. argues the trial court erred in accepting a waiver of jury trial over his objection. Kevin A. maintains the "law supports the proposition that the attorney may waive rights only if the attorney asserts that he or she is conveying the specific request of the client to waive the right." On the other hand, the Public Conservator contends California law permits an attorney to waive a client's statutory right to jury trial over the client's objection. Moreover, the Public Conservator argues that even if personal waiver is required by the conservatee, Kevin A. forfeited his right to jury trial by failing to make a timely demand.

    **A.**     **Proceedings Below**

Immediately following a hearing held pursuant to *People v. Marsden* (1970) 2 Cal.3d 118, in which the court denied Kevin A.'s apparent request to replace his attorney, the following colloquy occurred:

> "THE COURT: [L]et's go ahead. I do believe the other parties are back here. They may come back into court now that we've had this confidential hearing.
>
> "Okay. We're going back on record with all parties present here in the matter of the conservatorship of [Kevin A.] [¶] …[¶] … I think we're ready to proceed. The matter was assigned to this court for a jury trial.
>
> "But, [conservatee's counsel], you wish to be heard on that—that issue.
>
> "[CONSERVATEE'S COUNSEL]: Yes, your Honor. I'm prepared to enter a waiver of jury trial at this point and have a court trial in this case. And I have the authority of People vs.—*Conservatorship of Maldonado*, 173 Cal.App.3d 144.
>
> "THE COURT: Okay.

5.

"[CONSERVATEE'S COUNSEL]: I'm sorry. Yes. I'd like to enter waiver of jury trial pursuant to the case of *Conservatorship of Maldonado*.

"THE COURT: [Does] petitioner wish to be heard on that issue?

"[PUBLIC CONSERVATOR'S COUNSEL]: We have no objection to waiving the jury trial today, your Honor.

"THE COURT: Okay. [Kevin A.]

"[KEVIN A.]: I—I would like a full jury trial, please, your Honor, for today.

"THE COURT: What's your position with regard to your client's wish, [conservatee's counsel]?

"[KEVIN A.]: Denial of due process.

"[CONSERVATEE'S COUNSEL]: I believe that because the jury trial right in this case is a statutory right, it could be waived by counsel. It could be waived by [Kevin A.]'s attorney.

"THE COURT: I take it, you know, goes without saying that you believe what's in your client's best interest to waive statutory right to jury trial under the circumstances that exist at this time.

"[CONSERVATEE'S COUNSEL]: Yes, your Honor.

"THE COURT: Okay. I'm going to grant the waiver. My understanding is for conservatorship proceedings, it's a statutory right, and it's counsel's determination that it's in his client's best interest to do so; so, I find that that's a valid waiver, and I'll grant that waiver.

"[KEVIN A.]: It's—it's invalid. Your Honor, for a clarifying question—can I ask a clarifying question?

"THE COURT: Talk to your attorney ….

"[KEVIN A.]: I can't ask a clarifying question?

"THE COURT: You cannot, sir.

"[KEVIN A.]: Okay.

"THE COURT: Do you want to take a break, talk to your lawyer.

6.

"[KEVIN A.]:  I had a quick question.  Don't take a break.  Just one question.

"Your Honor, he doesn't makes [*sic*] sense.  He says I don't have a constitutional right to a jury trial.  What are we here for?  I don't have the constitutional right to have a trial?  Why am I here?

"THE COURT:  Because we're going to have a trial in front of the Court; not a jury.

"[KEVIN A.]:  He said I have a constitutional right to have a jury.  Why am I not—

"THE COURT:  No, you do not.

"[KEVIN A.]:  I do not have a constitutional right?

"THE COURT:  You only have a right by California statute, sir.  That statutory right is different from a constitutional right and may be waived by your attorney if he feels it's appropriate to do so.  [He] has made that determination, so the Court has accepted that."

## B.     The Law and Our Analysis

In August 2015, the California Supreme Court decided two cases that guide our decision here:  *People v. Blackburn*, *supra*, 61 Cal.4th 1113 and *People v. Tran*, *supra*, 61 Cal.4th 1160.  In *Blackburn*, the high court was faced with the question of whether a trial court must personally advise a mentally disordered offender (MDO) of his or her right to a jury trial, and whether the trial court must obtain a personal waiver of that right from the offender before conducting a bench trial to extend the MDO commitment. (*People v. Blackburn*, *supra*, at p. 1116.)  In the companion case, *Tran*, the question before the court presented a similar rights and waiver issue wherein the extension of an involuntary commitment was preceded by the original commitment after the individual pleaded not guilty by reason of insanity (NGI) to a criminal offense.  (*People v. Tran*, *supra*, at p. 1163.)

In this case, the statutory language differs somewhat from that at issue in *Blackburn* and *Tran*. Nevertheless, we conclude the high court's holdings determine the outcome of this LPS conservatorship proceeding.

In *Blackburn*, the California Supreme Court held "the trial court must advise the MDO defendant personally of his or her right to a jury trial and, before holding a bench trial, must obtain a personal waiver of that right from the defendant unless the court finds substantial evidence—that is, evidence sufficient to raise a reasonable doubt—that the defendant lacks the capacity to make a knowing and voluntary waiver, in which case defense counsel controls the waiver decision." (*Blackburn*, at p. 1116.) In *Tran*, it held a "trial court must advise the NGI defendant personally of his or her right to a jury trial and, before holding a bench trial, must obtain a personal waiver of that right from the defendant unless the court finds substantial evidence that the defendant lacks the capacity to make a knowing and voluntary waiver, in which case defense counsel controls the waiver decision." (*Tran*, *supra*, at p. 1163.)

Here, in the citation accompanying the petition for reappointment of conservatorship over his person and estate, Kevin A. was advised as follows:

> "4. You have the right to appear at the hearing and oppose the petition. You have the right to hire an attorney of your choice to represent you. The court will appoint an attorney to represent you if you are unable to retain one. You must pay the cost of that attorney if you are able. *You have the right to a jury trial if you wish.*" (Italics added; see Prob. Code, § 1823.)

Section 5350 provides, in relevant part, the "procedure for establishing, administering, and terminating a conservatorship under this chapter shall be the same as that provided in Division 4 (commencing with Section 1400) of the Probate Code …." Probate Code section 1827 provides: "The court shall hear and determine the matter of the establishment of the conservatorship according to the law and procedure relating to the trial of civil actions, including trial by jury if demanded by the proposed conservatee." Section 1828 of the Probate Code requires the court to "inform the proposed conservatee"

8.

of his or her "right to oppose the proceeding, to have the matter of the establishment of the conservatorship tried by jury, to be represented by legal counsel if the proposed conservatee so chooses, and to have legal counsel appointed by the court if unable to retain legal counsel." (Prob. Code, § 1828, subd. (a)(6).) Thereafter, the court must "consult the proposed conservatee to determine the proposed conservatee's opinion" regarding the "establishment of the conservatorship," the "appointment of the proposed conservator" and any limitation to his or her legal capacities. (Prob. Code, § 1828, subd. (b)(1)-(3).)

Acknowledging civil commitment proceedings involve certain significant deprivations of liberty, and recognizing that not all "constitutional protections available in the criminal context apply" in civil commitment proceedings, the California Supreme Court was careful to distinguish its earlier holding in *People v. Masterson* (1994) 8 Cal.4th 965. (*People v. Blackburn*, *supra*, 61 Cal.4th at pp. 1119-1121.) In that case, it held counsel could properly waive a defendant's right to jury trial in a Penal Code section 1368 proceeding, "'even over the defendant's objection.'" (*Blackburn*, at p. 1120.)

> "[W]e began by citing the general proposition that "'counsel is captain of the ship"' and has authority to bind the client in procedural aspects of litigation. [Citation.] But we did not rely on that general proposition to resolve the case, nor did we 'decide whether … there are some statutory rights that counsel may not waive.' [Citation.] 'Rather,' we said, 'we base our conclusion upon an examination of the nature of competency proceedings as well as the jury trial right at issue.' [Citation.]

> "In addition to noting that the right to a jury trial in a competency proceeding is 'statutory not constitutional,' we observed in *Masterson* that the applicable statutes neither require an advisement nor address the issue of waiver. [Citation.] We explained: 'The sole purpose of a competency proceeding is to determine the defendant's present mental competence, i.e., whether the defendant is able to understand the nature of the criminal proceedings and to assist counsel in a rational manner. [Citations.] Because of this, the defendant necessarily plays a lesser personal role in the proceeding than in a trial of guilt. … Crucial to our reasoning was the fact that "'[a Penal Code] section 1368 hearing is held only after there has been a prima facie showing of mental incompetence.'" [Citations.] "'Of

9.

necessity, therefore, defendant's attorney must play a greater role in making fundamental choices for him, and cannot be expected to seek approval of strategic decisions made in the course of obtaining and presenting proof of incompetence.'" [Citation.]

"Thus, *Masterson* focused on the particular statutory scheme and nature of the "'special proceeding'" at issue. [Citation.] The statutes at issue in *Masterson* make clear that there has already been a prima facie showing of incompetence by the time a defendant faces a competency hearing, and thus it is sensible that counsel's decisions may trump the defendant's. In resolving the present case, we focus our attention on the statutory scheme for extending an MDO defendant's commitment and on the nature and purpose of those proceedings." (*People v. Blackburn*, *supra*, 61 Cal.4th at pp. 1120-1121.)

The MDO commitment has the dual purpose of protecting the public and treating severely mentally ill offenders. (*People v. Blackburn*, *supra*, 61 Cal.4th at p. 1122.) The NGI commitment scheme shares the same purpose. (*People v. Tran*, *supra*, 61 Cal.4th at p. 1168.) We note the LPS Act shares those purposes as well. (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 150.)

The *Blackburn* court went on to hold that the relevant statute, Penal Code section 2972, requires the court to advise the MDO defendant, on the record, of his or her right to a jury trial. (*People v. Blackburn*, *supra*, 61 Cal.4th at p. 1124.) Similarly, in *Tran*, the court held Penal Code section 1026.5, subdivision (b)(3) also requires the court to advise the NGI defendant of his or her right to jury trial on the record in a court proceeding. (*People v. Tran*, *supra*, 61 Cal.4th at pp. 1163, 1166.) Both courts determined the relevant statutes allow for waiver by the MDO defendant or the NGI defendant personally, unless there is substantial evidence the defendant lacks the capacity to make a knowing and voluntary waiver. In such a situation, control of the waiver decision belongs to the defendant's counsel, despite the defendant's objection. (*Blackburn*, *supra*, at pp. 1116, 1130; *Tran*, *supra*, at pp. 1163, 1167.)

In both *Blackburn* and *Tran*, neither defendant was advised by the trial court of his right to a jury trial, nor did either personally waive that right. Neither trial court found

the defendant lacked the capacity to knowingly and voluntarily waive that right. (*People v. Blackburn*, *supra*, 61 Cal.4th at p. 1116; *People v. Tran*, *supra*, 61 Cal.4th at p. 1163.) Given the errors identified, the high court considered the appropriate remedy. (*Blackburn*, *supra*, at pp. 1132-1138.) It determined "that when a trial court errs in completely denying an MDO defendant the right to a jury trial under [Penal Code] section 2972(a), the error requires automatic reversal." (*Id.* at p. 1136.) The *Tran* court concluded similarly: in light of such error, automatic reversal is required. (*Tran*, *supra*, at pp. 1169-1170.)

Here, even assuming Kevin A. was advised by the trial court on the record of his right to a jury trial, Kevin A. did not voluntarily waive that right in favor of a court trial. To the contrary, Kevin A. very plainly expressed his wish to have a jury hear the matter despite his attorney's statements: "I—I would like a full jury trial, please, your Honor, for today."

Instead, the trial court accepted the waiver proffered by Kevin A.'s attorney over Kevin A.'s express wishes. The court made no specific finding that Kevin A. lacked the capacity to decide for himself whether to proceed before a jury. The court's cursory reference to Kevin A.'s counsel acting in his best interest is insufficient in light of the holdings in *Blackburn* and *Tran*. Therefore, Kevin A. was completely denied his statutory right to a jury trial despite his express wish to proceed with a jury.

Further, *Masterson*, upon which the Public Conservator relies, does not require a different result. Unlike *Masterson*, here there was no prima facie showing of Kevin A.'s incompetency. The Penal Code section 1368 proceeding at issue in *Masterson* is a special proceeding requiring the attorney to play a greater role in light of the showing of mental incompetence. (*People v. Masterson*, *supra*, 8 Cal.4th at p. 972; *People v. Blackburn*, *supra*, 61 Cal.4th at p. 1121.) *Masterson* is thus distinguishable from this case.

Our decision today does not conflict with our previous decision on a related LPS issue. In *Conservatorship of Mary K.* (1991) 234 Cal.App.3d 265, while we found an on-the-record personal waiver was not required of a proposed conservatee, we did determine counsel could validly waive a conservatee's right to jury trial. Yet our holding there is factually distinguishable because the conservatee herself wanted a court trial rather than a jury trial. (*Id.* at p. 269.) It is of great significance that Kevin A. expressed a desire contrary to that expressed by his attorney, and in no way sought to waive a right afforded him.

We note also the Sixth Appellate District in *Conservatorship of Maldonado* (1985) 173 Cal.App.3d 144 recognized the right to a jury trial was statutory and could be waived by the conservatee's counsel. In that case, however, Maldonado did "not contend his attorney was without actual authority to waive a jury trial on his behalf." (*Id.* at p. 148.) We know that was not the case below. The record here clearly establishes Kevin A. did not desire to waive his right to a jury trial, nor did he acquiesce when his attorney indicated he wished to waive Kevin A.'s right in favor of a court trial. This case is factually very different from *Maldonado*.

Further, this case is unlike *Conservatorship of John L.*, *supra*, 48 Cal.4th 131. There, counsel for John L. advised the court John L. did not wish to contest conservatorship, nor did he wish to be present in court for the proceedings. (*Id.* at p. 141.) The court accepted that counsel was representing her client's wishes to waive his right to contest the proceedings and to be present for them, and it affirmed the Court of Appeal's holding that John had not been denied his state and federal constitutional due process rights. (*Id.* at pp. 142-157.) Here, counsel for Kevin A. did not proceed in accordance with Kevin A.'s express consent. In fact, he proceeded in direct contravention thereto. Kevin A. did not intend to waive his right to a jury trial whereas John L. chose to waive his right to contest the proceedings and his right to be present.

The Public Conservator's reliance on *People v. Barrett* (2012) 54 Cal.4th 1081 is misplaced. As the high court explained in *Blackburn*, "many persons who suffer from mental illness or related disorders can understand the nature of legal proceedings and determine their own best interests." (*People v. Blackburn*, *supra*, 61 Cal.4th at p. 1128.) The court recognized a distinction between developmental disability—a lifelong condition—and mental illness. (*Ibid*.) "The potentially transitory and treatable nature of mental illness and the potentially limited areas of functioning impaired by such illness preclude any categorical inference that an MDO defendant facing a commitment extension proceeding cannot competently decide whether to waive a jury trial." (*Id.* at p. 1129.) We conclude the same reasoning is applicable to a commitment extension in an LPS proceeding. Hence, Kevin A.'s condition should "preclude any categorical inference" that he is unable to make a determination regarding his right to a jury trial.

Lastly, the Public Conservator asserts that even if the trial court erred by accepting counsel's waiver of Kevin A.'s right to a jury trial, Kevin A. forfeited that right by failing to make a timely demand in the first instance. We need not address this assertion, however, because the Public Conservator has forfeited her own argument by failing to include any citations to the record in that regard.

Rule 8.204(a)(1)(C) of the California Rules of Court requires all appellate briefs to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." It is well-established that "'[i]f a party fails to support an argument with the necessary citations to the record, … the argument [will be] deemed to have been waived. [Citation.]'" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) This rule applies to matters referenced at any point in the brief, not just in the statement of facts. (*Lona v. Citibank*, *N.A.* (2011) 202 Cal.App.4th 89, 96, fn. 2.)[3]

---

[3]We note additionally that while the record includes minute orders dated, for example, September 12, October 3, and October 10, 2014, reporter's transcripts corresponding to those dates are not a part of the record on appeal. Were we to address the Public Conservator's

13.

Finally, in light of our finding the trial court erred in accepting counsel's waiver of Kevin A.'s right to a jury trial, we must address the appropriate remedy. After consideration of the same, both the *Blackburn* and *Tran* courts concluded such error requires automatic reversal. (*People v. Blackburn*, *supra*, 61 Cal.4th at p. 1136; *People v. Tran*, *supra*, 61 Cal.4th at pp. 1169-1170.) Accordingly, we will reverse. For these reasons, we do not address Kevin A.'s other contentions on appeal.

## DISPOSITION

The order granting the petition for conservatorship is reversed.

_____

PEÑA, J.

WE CONCUR:


_____

DETJEN, Acting P.J.


_____

SMITH, J.

---

argument concerning forfeiture, we would be hesitant to find a forfeiture where it appears the record is incomplete.