Filed 4/14/21  Conservatorship of T.B. CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| Conservatorship of the Person of T.B. | |
| PUBLIC GUARDIAN OF CONTRA COSTA COUNTY, | A160697 |
| Petitioner and Respondent, | (Contra Costa County Super. Ct. No. P1901896) |
| v. | |
| T.B., | |
| Objector and Appellant. | |

Appellant, T.B., challenges the order appointing Anna M. Roth, public guardian and director of the Contra Costa County Health Services Department (Public Guardian), as the conservator of her person pursuant to the Lanterman-Petris-Short (LPS) Act.  (Welf. & Inst. Code,[1] § 5000 et seq.) After a court trial, the court approved the conservatorship petition and issued a conservatorship order.  We conclude appellant did not knowingly and intelligently waive her right to a jury trial.  Accordingly, we reverse.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

# BACKGROUND

On December 31, 2019, the Public Guardian petitioned to be appointed as LPS conservator for T.B., alleging she was gravely disabled as a result of a mental disorder, and that she was unwilling to accept, or incapable of accepting, treatment voluntarily.  (§ 5008, subd. (h)(1)(A).)  On or around the same date, the trial court appointed the Public Guardian as appellant's temporary conservator.  At the time, appellant was 32 years old, and diagnosed as suffering from schizoaffective disorder.

As a result of the COVID-19 pandemic, appellant's case was continued a number of times.  At a hearing in May 2020, conducted using Zoom, appellant's counsel waived her appearance, but indicated appellant intended to contest the petition and requested a jury trial.  The court scheduled the jury trial for a date in June 2020.

On June 2, 2020, a jury panel was not available.  In addition, there was a concern about whether appellant would be able to return to her care facility if she left it to come to the courthouse, and counsel for the Public Guardian had not received subpoenaed records.  Appellant's counsel requested a jury trial for the following day, which was denied.  Instead, the court continued the matter and indicated that counsel for appellant "may consider speaking with his client regarding proceeding by court trial."

A week later, at a readiness conference, counsel for the Public Guardian reiterated that the care facility "doesn't let patients leave and return."  The court's minutes stated appellant "wants to proceed remotely."  The court rescheduled the readiness conference and set a date for a court trial.  At the readiness conference, appellant was not present, but her counsel confirmed the court trial date.  After a number of other hearings, appellant's court trial was held via Zoom on July 22, 2020.

2

At the beginning of the trial, appellant waived her right to a jury trial and her right to appear in person. Three witnesses testified, including appellant, her temporary conservator, and Michael Levin, M.D., who testified as an expert in psychiatry and grave disability. After closing arguments, the court approved the petition. The court found beyond a reasonable doubt that appellant was "gravely disabled" and that "her illness will prevent her from providing for her food, clothing, and shelter." About a month later, the court issued the conservatorship order and a letter of conservatorship. T.B. appeals.

## DISCUSSION

On appeal, appellant argues her jury trial waiver was invalid. We agree and reverse.

### I. *Jury Trial Waivers in Civil Commitment Cases*

In LPS proceedings, a proposed conservatee "shall have the right to demand a court or jury trial on the issue of whether he or she is gravely disabled." (§ 5350, subd. (d)(1).) Probate Code section 1828, applicable to LPS proceedings through section 5350,[2] provides: "before the establishment of a conservatorship of the person or estate, or both, the court shall inform the proposed conservatee of . . . [¶] . . . [¶] . . . the right . . . to have the matter of the establishment of the conservatorship tried by jury." (Prob. Code, § 1828, subd. (a)(6).) "The due process clause of the California Constitution requires that proof beyond a reasonable doubt and a unanimous jury verdict be applied to conservatorship proceedings under the LPS Act." (*Conservatorship of Roulet* (1979) 23 Cal.3d 219, 235.)

---

[2] Section 5350 provides in part that "[t]he procedure for establishing, administering, and terminating a conservatorship under this chapter shall be the same as that provided in Division 4 (commencing with Section 1400) of the Probate Code."

In civil commitment proceedings for mentally disordered offenders (MDO), and in commitment proceedings for defendants who plead not guilty by reason of insanity (NGI), courts must obtain express, personal waivers of the right to a jury trial. (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1130 [MDO case] (*Blackburn*); *People v. Tran* (2015) 61 Cal.4th 1160, 1167 [NGI case] (*Tran*).) Defense counsel may waive the right to jury trial on behalf of such defendants only where they lack the capacity to make a knowing and voluntary waiver. (*Blackburn*, at p. 1130; *Tran*, at p. 1167.)

In LPS proceedings, the same principles apply. In *Conservatorship of Kevin A.* (2015) 240 Cal.App.4th 1241, 1251 (*Kevin A.*), the trial court accepted a jury trial waiver offered by Kevin A.'s attorney against his client's wishes. Acknowledging that the LPS statutory language differs from the language at issue in *Blackburn* and *Tran*, the appellate court nonetheless concluded the Supreme Court's holdings in those cases applied and determined the trial court erred by accepting the attorney's waiver. (*Kevin A.*, at pp. 1244, 1248, 1253.)

In *Conservatorship of Heather W.* (2016) 245 Cal.App.4th 378, the appellate court reversed an LPS reappointment order in a case in which counsel did not request a jury trial, and the court did not advise Heather W. of her right. (*Id.* at pp. 381, 385.) Looking to *Blackburn* and *Tran*, the court explained that "MDO, NGI, and LPS proceedings have the same underlying goal—protecting the public and treating severely mentally ill persons." (*Heather W.*, at p. 383.) Because civil commitment impairs liberty interests, "LPS commitment proceedings require the court to obtain a personal waiver of the right to a jury trial from the proposed conservatee." (*Ibid.*)

In *People v. Blancett* (2017) 15 Cal.App.5th 1200, 1203 (*Blancett*), the MDO defendant's attorney represented to the trial court that the defendant

4

was " 'okay' " with having a judge, rather than a jury. The trial court then inquired of the defendant, " 'That's okay with you?' " and the defendant responded, " 'Yes, your honor.' " (*Ibid*.) The appellate court concluded the defendant "did not waive his right to a jury trial with full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it." (*Id.* at p. 1206.) Among other problems, the trial court did not explain the attributes or mechanics of a jury trial, inquire whether the defendant discussed his decision with his attorney, ask whether his attorney explained the differences between a bench and jury trial, or ask the defendant if he had any questions about the waiver. (*Ibid*.) *Blancett* reversed the defendant's commitment. (*Id.* at p. 1207.)

II.     *The Colloquy*

With these statutes and authorities in mind, we consider whether appellant's waiver of her right to a jury trial was knowing and intelligent. At the beginning of appellant's court trial, the following colloquy occurred:

"THE COURT:  [¶] . . . [¶]  [I]n this type of a case, you have a right to a trial by jury. I'm told that you are giving up that right to have this court—me—decide the case instead of a jury.

"Do you understand that?

"[APPELLANT]:  Yeah. I don't want—

"THE COURT:  Do you give up your right to a trial by jury?

"[APPELLANT]:   —um—

"THE COURT:  Do you give up your right to a trial?

"[APPELLANT]:   —no—I'll (inaudible)

"THE COURT:  Is that 'doesn't'—do you want to have a trial by jury or a trial by the court?

5

"[APPELLANT]: I want to sit here and do my part and figure out what I would have to do to be successful.

"THE COURT: Okay.

"But the more immediate question for today is: Do you want me to decide your case or do you want to bring in 12 jurors to decide your case?

"[APPELLANT]: No—no, you would do a better job than I would.

"THE COURT: I need to ask you one more time—I'm not—I understand what you are saying about 'you'd do a good job'—do you want me to decide the case or do you want a jury to decide the case?

"[APPELLANT]: Um, what's the difference?

"THE COURT: Well, a jury is 12 people from the community that we bring into the courtroom.

"[APPELLANT]: Do I know them?

"THE COURT: No, you would not know any of them.

"[APPELLANT]: How would they prove their point?

"THE COURT: They would listen to all the evidence and make a decision.

"[APPELLANT]: Do I have to do that?

"THE COURT: No—in fact, your attorney has told us that you don't want to do that—I'm just checking.

"[APPELLANT]: That's okay—no.

"THE COURT: Okay. So, it's okay if we proceed without a jury in this case?

"[APPELLANT]: Yeah.

"THE COURT: Okay. Good.

[¶] . . . [¶]

6

"[COUNTY COUNSEL]:  [¶] . . . [¶]  I believe another question to be asked is if she has consulted with her attorney regarding the jury waiver.

"THE COURT:  . . . [D]id you talk to [your counsel] about having a trial without a jury?

"[APPELLANT]:  No.  He was only asking me if I wanted to go through the computer or I wanted to go to the courtroom.

"THE COURT:  All right.

"[Counsel], do you need to talk to your client about this separately?

"[COUNSEL FOR APPELLANT]:  Judge, we did discuss the issue of jury versus court yesterday, over phone.

"THE COURT:  All right.

"I'm satisfied with the waiver."

III.   *The Jury Trial Waiver Was Invalid*

Based on this record, we conclude appellant's jury trial waiver was not knowing and intelligent.  Her statements, including her comment to the judge that "you would do a better job than I would," and her questions "what's the difference?" and "[h]ow would they prove their point?" indicate she did not understand the difference between a jury trial and a court trial. Moreover, appellant did not recall discussing the difference with her attorney.

Even though the trial court mentioned a jury consists of 12 members from the community, we cannot say appellant waived her right "with full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it."  (*Blancett*, *supra*, 15 Cal.App.5th at p. 1206.) It is not clear, for example, whether appellant was aware that she "may participate in jury selection . . . [and that] all 12 jurors must unanimously agree in order to render a verdict."  (*People v. Sivongxxay* (2017) 3 Cal.5th

7

151, 169–170.) The trial court accepted appellant's waiver after her counsel stated he discussed the difference with appellant by telephone, but appellant only recalled discussing whether she should appear remotely or in person. The trial court made no further inquiry of either appellant or her counsel regarding what they discussed, so there is no record about what, if anything, counsel explained to his client. Based on this sparse record, we fail to see how the trial court could conclude appellant understood the right she was waiving or the consequences of doing so. (*People v. Daniels* (2017) 3 Cal.5th 961, 993 (lead opn. of Cuéllar, J.) ["the trial court is not merely a passive receiver of an attempted waiver"].)

Like in *Blancett, supra*, 15 Cal.App.5th at page 1206, this proceeding appears to be appellant's first civil commitment, and we cannot presume she was legally sophisticated or understood the difference between a bench trial and a jury trial. (Cf. *People v. Sivongxxay, supra*, 3 Cal.5th at p. 167 [finding defendant entered a knowing and intelligent jury waiver in part because he "had prior experience with the criminal justice system, having pleaded guilty to two prior offenses in Oregon and one in Washington State"].) Furthermore, appellant initially requested a jury trial. The record suggests her attorney may have attempted to persuade her to give up the right due to logistical problems created by the COVID-19 pandemic.

The Public Guardian argues appellant "forfeited any objection to the validity of her jury trial advisement and waiver, when her attorney did not object at trial." Not so. "The jury trial right . . . is not subject to forfeiture." (*People v. Daniels, supra*, 3 Cal.5th at p. 998 (lead opn. of Cuéllar, J.); *People v. Collins* (2001) 26 Cal.4th 297, 305, fn. 2 [jury trial right is "a fundamental constitutional right that, although clearly waivable, may be waived only if

8

there is evidence in the record that the decision to do so was knowing, intelligent, and voluntary"].)

In arguing appellant's waiver was valid, the Public Guardian claims she merely "asked clarifying questions, 'Do I know them?' and 'Do I have to do that?', indicating that she understood the potential situation the court described to her, and she did not want to have a jury decide her case if it was not required." In contrast to the "barebones colloquy" in *Blancett*, *supra*, 15 Cal.App.5th at page 1206, the Public Guardian claims "the trial court judge engaged T.B. in a conversation . . . and gained a satisfactory understanding from T.B. that she did not want a jury trial."

We are not persuaded. Appellant's question, "Do I know them?" indicates she did not understand that jurors must be impartial. And her question, "Do I have to do that?" is ambiguous because it is not clear if appellant meant "Do I have to have a jury," or "Do I have to listen to all the evidence and decide the case." These were not "clarifying questions." Instead, they highlight appellant's confusion. Similarly, appellant asked the court how the jury would "prove their point" and, when the court asked if she wanted a bench or jury trial, appellant responded, "No—no, you would do a better job than I would." This colloquy is further evidence that appellant did not sufficiently comprehend the nature of this right.

We recognize that there is no "rigid formula or particular form of words that a trial court must use in taking a jury waiver." (*People v. Sivongxxay*, *supra*, 3 Cal.5th at p. 169.) Nevertheless, in this case, considering appellant's questions and responses, the trial court should have done more to ascertain whether her discussion with her attorney sufficiently informed appellant regarding the nature of the right and whether further advisements were necessary. (*People v. Jones* (2018) 26 Cal.App.5th 420, 436 [reversing

judgment in part because trial court did not "take steps to ensure [defendant] 'comprehend[ed] what the jury trial right entails' "].)  Based on the record before us, the conclusion is inescapable that appellant did not waive the right to a jury trial "with full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it." (*Blancett*, *supra*, 15 Cal.App.5th at p.1206.)

      IV.   *The Appropriate Remedy*

      The failure to obtain a valid jury trial waiver in a MDO or NGI civil commitment case "is not susceptible to ordinary harmless error analysis and automatically requires reversal." (*Tran, supra*, 61 Cal.4th at p. 1169; *Blackburn, supra*, 61 Cal.4th at pp. 1132–1133.)  However, "[a] trial court's acceptance of counsel's waiver without an explicit finding of substantial evidence that the . . . defendant lacked the capacity to make a knowing and voluntary waiver may be deemed harmless if the record affirmatively shows that there was substantial evidence that the defendant lacked that capacity at the time of defense counsel's waiver.  Similarly, a trial court's acceptance of a defendant's personal waiver without an express advisement of the statutory right to a jury trial may be deemed harmless if the record affirmatively shows, based on the totality of the circumstances, that the defendant's waiver was knowing and voluntary." (*Tran*, at p. 1170; *Blackburn*, at p. 1136.)

      In *Kevin A., supra*, 240 Cal.App.4th at page 1253, an LPS case in which the trial court accepted counsel's waiver of the jury trial right over the proposed conservatee's objection, the Court of Appeal reversed the conservatorship order, but did not remand for further proceedings.  In *Conservatorship of Heather W., supra*, 245 Cal.App.4th at pages 384–385,

the LPS reappointment case in which counsel did not request a jury trial, and in which the trial court did not advise Heather W. of her right to a jury trial, the appellate court reversed the conservatorship order, but remanded for the trial court to determine whether Heather W. lacked the capacity to make a knowing and voluntary waiver.

Here, we reverse without remanding for further proceedings. In *Tran* and *Blackburn*, our high court noted the parties may have reasonably relied on the law in effect prior to its decisions, and therefore it remanded the cases for a determination of whether there was evidence of the defendant's knowing and voluntary waiver or evidence the defendant lacked the capacity to do so. (*Tran*, *supra*, 61 Cal.4th at p. 1170; *Blackburn*, *supra*, 61 Cal.4th at p. 1137.) The court noted the same approach "applies to all cases presently on direct appeal" where the record was not developed below. (*Tran*, at p. 1170; *Blackburn*, at p. 1137.)

Here, the bench trial occurred in 2020, years after the decisions in *Blackburn*, *Tran*, *Kevin A.*, and *Conservatorship of Heather W.* Regarding appellant's capacity to waive the right, her testimony during the bench trial indicates, as the trial court put it, that she "doesn't appear to completely separate delusion from reality," but, for the most part, she answered the attorneys' and the court's questions coherently, and there is no indication she was incapable of understanding the attributes or mechanics of a jury trial. Moreover, the " 'potentially transitory and treatable nature of mental illness' " precludes " 'any categorical inference' " that appellant was unable to make a determination regarding her right to a jury trial. (*Kevin A.*, *supra*, 240 Cal.App.4th at p. 1252.) Indeed, the Public Guardian does not argue appellant lacked the capacity to waive the right. Instead, the Public

11

Guardian argues her waiver was knowing and intelligent.  For the reasons already explained, we disagree.

Based on these considerations, "the error . . . requires reversal, not a remand for further proceedings."  (*Blancett, supra,* 15 Cal.App.5th at p. 1207, citing *Blackburn, supra,* 61 Cal.4th at p. 1117.)  In light of this disposition, we do not address appellant's remaining contentions.

DISPOSITION

We reverse the order appointing the Public Guardian as the conservator of the person of T.B.

_____

Rodriguez, J.*

WE CONCUR:


_____

Simons, Acting P. J.


_____

Burns, J.


A160697

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.